**COURT OF CHANCERY**
**OF THE**
**STATE OF DELAWARE**

CHRISTIAN DOUGLAS WRIGHT
MAGISTRATE IN CHANCERY

LEONARD L. WILLIAMS JUSTICE CENTER
500 NORTH KING STREET, SUITE 11400
WILMINGTON, DE 19801-3734

Date Submitted: March 6, 2026
Date Decided: April 17, 2026

Siyuan Ma,
1400 Midvale Ave, 104
Los Angeles, CA 90024

Stephen J. Kraftschik, Esquire
Andrew H. Meek, Esquire
Polsinelli PC
222 Delaware Ave., Suite 1101
Wilmington, DE 19801

Re: *Siyuan Ma v. iShopShops, Inc.*,
C.A. No. 2025-1499-CDW

Dear Plaintiff and Counsel:

Plaintiff Siyuan Ma demands inspection of certain books and records of defendant iShopShops, Inc. ("iShopShops") under Section 220 of the Delaware General Corporation Law ("DGCL").[1] iShopShops objects to the inspection on several grounds, including that Ma does not have standing to inspect iShopShops' books and records because she was not a stockholder when she filed the complaint. After careful review of the evidence and arguments the parties presented, I agree with iShopShops that Ma lacks standing to seek its books and records because she initiated this litigation after losing her

---

[1] 8 *Del. C.* §§ 101–398.

stockholder status. I recommend Ma's inspection demand be denied on that basis.

## I. BACKGROUND

The parties consented to a trial on a paper record without argument,[2] so the following facts are as I find them based on the complaint,[3] the answer,[4] the parties' pretrial briefs,[5] and the exhibits submitted for the court's consideration.

### A. The Key Players

Ma is a former stockholder and employee of iShopShops.[6] iShopShops is a Delaware corporation with its principal place of business in New York City.[7] iShopShops operates an e-commerce platform specializing in live-stream shopping experiences, primarily for the sale fashion, luxury retail, and pre-owned goods.[8]

---

[2] *See* Dkt. 13.

[3] Verified Compl., Dkt. 1 ("Compl.").

[4] Def. iShopShops, Inc.'s Original Ans., Dkt. 16 ("Ans.").

[5] Pl.'s Opening Br., Dkt. 17 ("Opening Br."); Def.'s Answering Pretrial Br., Dkt. 20 ("Answering Br.").

[6] Compl. ¶ 1; Ans. ¶ 1 (admitting plaintiff was a stockholder); *see* Opening Br. 1 (claiming Ma is "co-founder and senior operational executive").

[7] Ans. ¶ 2.

[8] Answering Br. Ex. 10 ("Info Statement") at 1.

Komehyo Holdings Co., Ltd. ("Komehyo") is a Japanese company that primarily engages in the secondhand fashion business.[9] Komehyo indirectly acquired iShopShops in December 2025 through its wholly owned subsidiary, Komehyo Merger Sub, Inc. ("Merger Sub"), a single purpose entity Komehyo formed for the sole purpose of acquiring iShopShops.[10]

## B. Komehyo Acquires iShopShops

On November 25, 2025, Komehyo, Merger Sub, iShopShops, and Liyia Wu, iShopShops' stockholder representative,[11] entered into an Agreement and Plan of Merger ("Merger Agreement").[12] Under the Merger Agreement, Komehyo would pay off iShopShops' outstanding debt and, in exchange, iShopShops would combine with Merger Sub and cancel all outstanding and capital stock.[13] As a result, all of iShopShops' stockholders would lose any ownership interest in the surviving entity.[14]

On December 2, iShopShops distributed an information statement to its stockholders that attached the Merger Agreement and described (1) the Merger

---

[9] *Id.*

[10] *Id.*

[11] *Id.*

[12] *See* Answering Br. Ex. 9 ("Merger Agreement") at Cover Page.

[13] *See* Info Statement 1–2; Merger Agreement Art. II.

[14] Info Statement 2; Merger Agreement § 2.08.

Agreement's key terms; (2) the consideration for and treatment of each stockholder's shares; and (3) information regarding each stockholder's rights related to the proposed merger.[15]

On December 4, Ma's counsel sent iShopShops a letter purportedly notifying iShopShops of "several issues that must be addressed" so the merger could lawfully proceed.[16] The letter claimed that iShopShops owed $120,000 to an entity Ma controlled and detailed a potential employment law claim Ma might bring against iShopShops.[17]

On December 10, Ma sent a demand to inspect iShopShops' books and records under Section 220 ("Demand").[18] The Demand sought five categories of records for five stated purposes: (1) to investigate the "fairness, process, and disclosures" related to Komehyo's acquisition of iShopShops; (2) to investigate potential mismanagement and breaches of fiduciary duties; (3) to evaluate iShopShops' financial status; (4) to assess the adequacy of disclosures provided

---

[15] Info Statement 1–6; Opening Br. pt. II ¶ 1.

[16] Answering Br. Ex. 1 at 1.

[17] *Id.* 1–2.

[18] Answering Br. Ex. 2 ("Demand") (citing 8 *Del. C.* § 220); Compl. ¶ 16; Opening Br. pt. II. ¶ 2.

to iShopShops' stockholders; and (5) to evaluate potential derivative and direct claims arising from the merger process.[19]

On December 15, iShopShops responded to the Demand. In its correspondence with Ma,[20] iShopShops asserted the Demand was deficient, both as to proper purpose and scope.[21] Nonetheless, iShopShops, reserving its right to stand on objections to the Demand, offered to meet and confer to see if the parties could agree on a substantially narrowed set of documents and an appropriate confidentiality agreement.[22] Ma did not respond to iShopShops' letter.[23]

---

[19] Demand pts. I.1–I.5, pts. II.1–II.5.

[20] iShop addressed this letter to Ma's counsel because the Demand requested this. *See* Answering Br. Ex. 2 at 1; Demand pt. IV ("Please direct all communications regarding [the Demand] to my counsel[.]"). It appears that representation ended around this time as subsequent correspondence is addressed to or sent by Ma directly. *See* Answering Br. Exs. 4–6.

[21] Answering Br. Ex. 3 at 1; *see* Compl. ¶ 17.

[22] *See* Answering Br. Ex. 3 at 1–2("[W]ithout waiving any objections or defenses, the Company is prepared to engage in a good-faith process to determine whether a reasonable, appropriately tailored production can be agreed upon without the need for judicial intervention."); Compl. ¶ 17 ("The Company did not agree to produce any documents, did not commit to a production schedule, and did not permit inspection of any books and records.").

[23] Answering Br. 2.

On December 17, the merger closed when iShopShops filed a certificate of merger with the Delaware Secretary of State's office.[24] Ma's stock was cancelled and retired once iShopShops filed this certificate.[25]

## C.     Ma Initiates This Inspection Action

On December 29, Ma filed the complaint.[26] On January 5, 2026, the parties met regarding a possible confidentiality agreement and the scope of production, but were unable to come to a resolution.[27] iShopShops alleges that it was not informed about this inspection action until Ma emailed the court's assignment letter[28] to its counsel the next day.[29]

On January 9, the parties attempted to negotiate a case schedule.[30] Four days later, iShopShops' counsel informed the court via letter that the parties had not come to an agreement on a case schedule.[31] The parties submitted competing case schedules, and the court entered an accelerated version of

---

[24] Answering Br. Ex. 11; Merger Agreement § 2.04.

[25] Merger Agreement §§ 2.04, 2.08.

[26] Dkt. 1.

[27] Opening Br. pt. II. ¶ 6; *see* Opening Br. Ex. F; Answering Br. 3.

[28] Dkt. 8.

[29] Answering Br. 6.

[30] *Id.*

[31] Dkt. 10.

iShopShops' scheduling proposal the next day.[32]  The schedule also set a deadline for iShopShops to voluntarily produce some of the requested records.[33]

On January 23, the parties met and conferred on the scope of documents Ma wished to inspect as required in the scheduling order.[34]  One week later, iShopShops formally responded to the Demand ("Response"),[35] filed the answer,[36] and completed its voluntarily production in accordance with the Response and the court-ordered deadline.[37]

On February 14, Ma filed her opening brief.[38]  On February 20, iShopShops filed its answering brief.[39]  Under the case schedule, Ma was required to file a reply brief by February 27 but did not.[40]  Given Ma's status as a self-represented litigant, the court opted to provide Ma some additional time to file, and considers the matter under advisement as of March 6.

---

[32] *See* Dkts. 10–13.

[33] Dkts. 10, 14.

[34] Opening Br. pt. II. ¶¶ 6–7; Opening Br. Ex. F; Dkt. 14.

[35] Answering Br. Ex. 4.

[36] Dkt. 16.

[37] Answering Br. 3; Answering Br. Exs. 4–5; Opening Br. pt. II ¶ 8; Opening Br. Exs. F–G.

[38] Dkt. 17.

[39] Dkt. 20.

[40] Dkt. 14.

## II.    ANALYSIS

In 2017, Vice Chancellor Glasscock posed the following question:  "If a stockholder makes a proper demand under Section 220, and a merger thereafter terminates the stockholder's ownership interest in the corporation, does the now-former stockholder have standing to bring a complaint for corporate records?"  *Weingarten v. Monster Worldwide, Inc.*, 2017 WL 752179, at *1 (Del. Ch. Feb. 27, 2017).  Construing the plain language of Section 220 of the DGCL, Vice Chancellor Glasscock answered that question in the negative:  "[O]nly those who are stockholders at the time of filing have standing to invoke this Court's assistance under Section 220."  *Id.* at *5.  Other members of the court have confirmed this basic and unassailable requirement since *Weingarten*.[41]

---

[41]*E.g.*, *Barkan v. Exabeam, Inc.*, 2025 WL 1088821, at *7 (Apr. 11, 2025) ("Section 220 requires stockholders to be record or beneficial stockholders to enforce their inspection right. Nothing in Section 220's plain text or well-developed jurisprudence leaves room for circumventing the form and manner requirements.") (citing *Weingarten*); *Myers v. Academy Sec., Inc.*, 2023 WL 4782948, at *7 (Del. Ch. July 27, 2023) ("Under Section 220, a plaintiff must first establish that she 'is a stockholder'—or was at the time the complaint was filed.") (citing *Weingarten*); *Wei v. Zoox, Inc.*, 268 A.3d 1207, 1218 (Del. Ch. Jan. 31, 2022) ("Section 220 requires that a stockholder own stock at the time of filing its enforcement action.  Thus, when a transaction will extinguish the stockholder's ownership interest, the stockholder must file her enforcement action before the transaction closes.") (citing *Weingarten*); *Swift v. Houston Wire & Cable Co.*, 2021 WL 5763903, at *4 (Del. Ch. Dec. 3, 2021) ("The legislative intent behind the current ownership requirement of Section 220(c) is not difficult to glean.  A plaintiff must have first made a demand at a time when she was a stockholder.  And the plaintiff must continue to be a stockholder when she

This ownership requirement disposes of Ma's inspection demand here. The Merger Agreement clearly states that once the certificate of merger was filed with the Delaware Secretary of State's office, iShopShops' outstanding and capital stock would be cancelled and converted into a right to receive cash consideration.[42]  iShopShops did this on December 17, 2025—12 days before Ma filed the complaint.   Ma concedes as much in the Opening Brief.[43]

"Standing is required to 'ensure that the litigation before the tribunal is a case or controversy that is appropriate for the exercise of the court's judicial powers.' . . . '[S]tanding is properly a threshold question that the Court may not avoid.'" *Morris v. Spectra Energy P'rs.*, 246 A.3d 121, 128–29 (Del. 2021) (quoting *Dover Hist. Soc'y v. City of Dover Planning Comm'n*, 838 A.2d 1103, 1110 (Del. 2003) and *Gerber v. EPE Hldgs. LLC*, 2013 WL 209658, at *12 (Del. Ch. Jan. 18, 2013)).  "Once standing is lost, the court lacks the power to adjudicate the matter, and the action will be dismissed as moot unless an exception applies." *El Paso Pipeline GP Co., L.L.C. v. Brinckerhoff*, 152 A.2d 1248, 1256–57 (Del. 2016) (citing authorities).

---

initiates Section 220 litigation in this court.") (discussing *Weingarten*); *Walker v. Cabo Verde Cap., Inc.*, 2017 WL 2491516, at *2 (Del. Ch. June 8, 2017) ("The conclusion in *Weingarten* is straightforward and dispositive.  I cannot improve on its language or tailor it more precisely to the issue in this case[.]").

[42] Merger Agreement §§ 2.04, 2.08.

[43] *See* Opening Br. pt. IV.A.

To contest iShopShops' standing argument, Ma asserts she "timely invoked her statutory inspection rights while a record stockholder" and that the court should look beyond the "procedural formalities" because iShopShops "engage[d] substantively in the inspection process" before raising its standing defense.[44] At best,[45] her argument appears to be that because iShopShops voluntarily engaged with her and produced documents, iShopShops should be equitably estopped from raising standing at this stage in the proceedings.[46] Specifically, Ma alleges that iShopShops did not provide "contemporaneous statutory notice" as required by Section 228(e) of the DGCL after offering to compromise on the Demand, so she did not know she lost her stockholder status before filing suit.[47]

Even if there is an equitable exception to Section 220's clear and unambiguous language,[48] it would not apply here. "To invoke equitable

---

[44] *Id.*

[45] "The Court will view pleadings filed by pro se litigants with forgiving eyes." *Cf. Hall v. Coupe*, 2016 WL 3094406, at *2 (Del. Ch. May 25, 2016).

[46] *See* Opening Br. pt. IV.A. ("A corporation that substantively engages in the inspection process and produces materials before asserting a timing-based standing objection invites the Court to consider whether strict procedural reliance would align with § 220's remedial purpose").

[47] Opening Br. pt. I; *id.* pt. II ¶¶ 4–5, 9; *id.* pt. IV.A; Opening Br. Ex. G.

[48] *Contra Barkan*, 2025 WL 1088821, at *7 ("Section 220 provides no exception, equitable or otherwise, to the 'strictly enforced' form and manner requirements.") (citing authorities); *Katz v. Visionsense Corp.*, 2018 WL 3953765, at *1 (Del. Ch.

estoppel, the misled party must demonstrate 1) it lacked knowledge or the means of obtaining knowledge of the truth; 2) it reasonably relied on the conduct of the party against whom estoppel is sought, and; 3) it detrimentally changed position based on that reliance." *Weingarten*, 2017 WL 752179, at \*3 (citing *Salem Church Assocs. v. New Castle Cnty*, 2006 WL 2873745, at \*12 (Del. Ch. Oct. 6, 2006)). Ma offers no evidence iShopShops violated Section 228(e) in a way that negatively impacted her ability to seek inspection of iShopShops' books and records.[49] Ma also offers no evidence that the manner in which iShopShops engaged with her or her counsel before the merger's closing led her to refrain from filing her complaint between the expiration of the mandatory five-day waiting period on December 15 and the closing of the

---

Aug. 15, 2018) (rejecting argument plaintiff "should be permitted to proceed based on the equities of the case, because on the same day that he filed his complaint, the Company completed a merger that extinguished [his] status as a stockholder[.]"); *MaD Inves. GRMD, LLC v. GR Cos.*, 2020 WL 6306028, at \*6 (Del. Ch. Oct. 28, 2020) ("Following *Katz*, I conclude Section 220(c) offers no equitable safe harbor for Plaintiffs."); *accord Cent. Laborers Pension Fund v. News Corp.* 45 A.3d 139, 145 (Del. 2012) ("Delaware courts require strict adherence to the section 220 inspection demand procedural requirements."); *Swift*, 2021 WL 5763903, at \*6 ("[T]his court has long recognized that 'strict adherence to the requirements of 8 *Del. C.* § 220 is mandated.") (citing *Gay v. Cordon Int'l Corp.*, 1978 WL 2491, at \*1 (Del. Ch. Mar. 31, 1978) and *Cent. Laborers*, 45 A.3d at 145).

[49] Contrary to Ma's assertion in her Opening Brief, Section 228(e) does not, when it applies, require "contemporaneous" notice of stockholder action, it simply requires "prompt" notice after the action is taken. *See* 8 *Del. C.* § 228(e). Here, the merger closed the same day the stockholder consent was delivered, so even notice provided within hours of the stockholder consent's delivery would not have made a difference.

merger on December 17. Nor is there any reason to think she could: she complains that iShopShops substantively "engage[d] in the inspection process" before invoking standing as a defense,[50] but ignores the fact the substantive portion of this engagement did not occur until well after the merger closed and Ma lost standing.[51]

Before the merger closed, iShopShops' only engagement on the Demand was to send a letter (1) asserting deficiencies with the Demand, including as to purpose and scope, (2) stating iShopShops was not waiving its right to object to the Demand on those bases, and (3) offering to meet and confer to see if the parties could reach agreement on a substantially narrower set of books and records.[52] Ma had all the information she needed prior to the merger to know that if she wanted to obtain all of the books and records identified in the Demand she needed to file suit. But she did not do so for another two weeks, after the merger closed and she lost standing. In short, Ma does not—indeed,

---

[50] Opening Br. IV.A.

[51] *See* Answering Br. 5–7; Answering Br. Exs. 3–6; Opening Br. pt. II ¶¶ 4–9; Opening Br. Exs. C–F.

[52] Answering Br. Ex. 3; Opening Br. Ex. C; Compl. ¶¶ 17–18; Answering Br. 1–3.

she cannot—show that she detrimentally relied in any meaningful way on iShopShops' later voluntary communication and production.[53]

### III.  CONCLUSION

Because Ma was not a stockholder when she filed the complaint, she lacks standing to seek inspection under Section 220(c).  I recommend that her request for inspection be denied on that basis, and do not reach iShopShops' other arguments against inspection.

This is a Final Report under Court of Chancery Rule 144(b)(2).  Under Court of Chancery Rule 144(d)(1), any party who wishes to file exceptions to this report must file their notice of exceptions by April 22, 2026.

Very truly yours,

/s/ *Christian Douglas Wright*

Magistrate in Chancery

CDW/slk

---

[53] If anything, Ma's position in her brief appears unchanged from her Demand. *Compare* Opening Br. pt. IV.D, *with* Demand pt. II ¶¶ 1–5.